## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | |
|---|---|
| MARILYN C. POWELL, Executrix of the Estate of ALBERT B. COX, Deceased; and NORMA C. COOK, both Individually and as next friend and for the benefit of Albert B. Cox, Jr., | ) ) ) ) ) ) ) **FILED** ) ) February 17, 2000 ) ) Cecil Crowson, Jr. ) Appellate Court Clerk |
| Plaintiffs/Appellees, | ) Shelby Chancery No. 100766-3 R.D. |
| VS. | ) Appeal No. W1998-00001-COA-R3-CV |
| BRENDA C. MOORE, | ) ) ) |
| Defendant/Appellant. | ) |

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE D. J. ALISSANDRATOS, CHANCELLOR

TIMOTHY A. RYAN, III
Memphis, Tennessee
Attorney for Appellant


ALLAN B. THORP
THORP AND FONES, PLC
Memphis, Tennessee
Attorneys for Appellees

AFFIRMED

ALAN E. HIGHERS, J.

CONCUR:

DAVID R. FARMER, J.

HOLLY KIRBY LILLARD, J.

Brenda Moore has appealed the trial court's finding that she used undue influence and breached a fiduciary duty owed to her father, now deceased. For the following reasons, the judgment of the trial court is affirmed.

### Facts and Procedural History

This appeal arises from a suit filed by Marilyn Powell, as executrix of the deceased's estate, to recover money allegedly misappropriated by Brenda Moore. Powell alleged that Moore had breached a fiduciary duty and exerted undue influence on the deceased, Albert Cox, Sr. (Cox), and obtained funds that were intended to be used for the care of the deceased's son, Albert Cox, Jr. ("Buddy"). The trial court found for Powell, creating a resulting trust in favor of Buddy. Moore appeals.

Cox executed a will on March 16, 1988, providing that upon his death, all the assets in his estate were to be put in a trust for the care of Buddy. Buddy suffers from Down's Syndrome and is incapable of handling his own financial affairs. Brenda Moore was designated as the trustee of the trust. Upon Buddy's death, any assets were to be divided equally between Cox's remaining children: Powell, Moore, and Norma Cook.[1] At this time, Cox also signed a general and durable power of attorney in favor of Moore.

Cox died on August 24, 1991. The behavior of Moore prior to and immediately following Cox's death forms the basis for this appeal. During this period, Cox was in failing health and hospitalized several times. In May 1991, Moore took Cox to the First Tennessee Bank (FTB) to open a joint safe deposit box. Subsequently, Cox's financial papers were stored in the safe deposit box. In July 1991, Cox was sent a check in the amount of ninety-six thousand dollars from the estate of his sister. Cox was hospitalized at this time and sent Powell to retrieve the check, with the intent that it be deposited in an account at National Bank of Commerce (NBC). Cox was too weak to sign the signature cards required to open an account at NBC. Instead, Powell wrote the account number of Cox's First Tennessee Bank (FTB) account on the back of the check. (Powell then turned the check over to Moore.

Moore deposited the check into Cox's FTB account. Shortly thereafter, Moore withdrew ninety-thousand dollars from the FTB account. Moore used these funds to purchase a certificate of deposit at NBC. The certificate of deposit was noted as a joint account with right of survivorship, in the names of Cox and Moore. The effect of this transaction was to prevent the money from becoming part of Cox's estate upon his death. Instead, the money passed directly to Moore pursuant to the right of survivorship and did not become subject to the testamentary trust.

---

[1]Norma Cook was later added as an additional party plaintiff in the suit below. Cook serves as non-custodial co-guardian of Buddy.

In addition to the NBC certificate of deposit, several other savings accounts were opened at FTB in the joint names of Cox and Moore, with a right of survivorship. The record is unclear as to whether these accounts were set up by Moore using her power of attorney, or by Cox under the advisement of Moore. Four of these accounts, totaling over seventy-two thousand dollars, were paid out directly to Moore upon Cox's death.

Following Cox's death, Moore withdrew the funds from both FTB and NBC, and refused to turn them over to the estate. Moore claimed that Cox had intended for her to receive the funds and that he did not intend for the money to be part of his estate. Thereafter, Powell, as executrix of Cox's estate, filed suit in the Shelby County Chancery Court, alleging that Moore exerted undue influence and violated her fiduciary duty to Cox. A hearing on the matter was held on August 3, 1998.

At the hearing, several witnesses testified that Cox had intended for all his assets to be used for Buddy's care. In addition, Powell testified that she had witnessed Moore berating Cox and threatening to put him in a nursing home if he disagreed with the way his finances were handled. According to Powell, Cox expressly stated that he did not want to invest in any more certificates of deposit.

Moore testified that she was Buddy's custodial co-guardian and looked after his personal and financial needs. Moore also testified that she handled Cox's financial matters under his direction. Moore claimed that Cox had instructed her to deposit the inheritance check into the FTB account and to purchase the certificate of deposit at NBC. In addition, Moore claimed that the joint savings accounts with right of survivorship at FTB were set up pursuant to Cox's wishes.

The court found that Moore had been in a position of power with Cox and that she had used that power to unduly influence him. The court further found that a resulting trust in favor of Buddy was created because Moore had breached her fiduciary duty. The resulting trust contained the funds from both the NBC certificate of deposit and the FTB accounts. Moore was appointed as trustee of the resulting trust. Moore appeals.

On appeal, Moore asserts that the trial court erred in holding that the joint accounts with right of survivorship at FTB should be part of the resulting trust. Moore does not dispute the resulting trust as it pertains to the NBC certificate of deposit.

3

**Analysis**

The standard of review for a non-jury case is de novo upon the record. Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the "preponderance of the evidence is otherwise." TENN. R. APP. P. Rule 13(d). For issues of law, the standard of review is de novo, with no presumption of correctness. Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).

The sole issue on appeal is whether or not the trial court erred by including the FTB joint accounts with right of survivorship in the resulting trust. Moore argues that the accounts became her sole property upon Cox's death, and therefore should be subject to neither the terms of Cox's will nor the resulting trust set up by the trial court. We do not agree. The decision of the trial court is affirmed for the following reasons.

Moore relies on statutory and case law to support her position that the joint accounts are her sole property. In particular, Moore cites the following section of Tennessee Code Annotated:

> "(1) JOINT TENANTS WITH RIGHT OF SURVIVORSHIP. Such designation shall mean that the deposit account or certificate of deposit shall become the property of each owner as joint tenants, and that the *survivor is entitled to all moneys in the account or represented by the certificate even if the first person to die had a will specifically directing disposition to someone else.* The bank may release all moneys in the account or represented by the certificate to, or honor checks or orders drawn by, or withdrawal requests from, the survivor upon the death of any joint tenant..." Tenn. Code. Ann. §
>
> 45-2-703(c)-(f)(1) (emphasis added)

While this statute clearly supports Moore's position, she fails to address several important caveats that affect its application.

The Tennessee Supreme Court addressed the effect of joint accounts in Lowry v. Lowry. Lowry v, Lowry, 541 S.W.2d 128 (Tenn. 1976). Although Lowry was decided prior to the enactment of Tenn. Code Ann. § 45-2-703, this court has found that the principles of Lowry are still applicable in certain situations. See In Re Estate of Holmes, No. 02A01-9707-PB-00158H, 1998 WL 134333 at *2 (Tenn. Ct. App. March 26, 1998); see also In re Estate of Nichols, 856 S.W.2d 397 at 400 (Tenn. 1993); see also Pawlakos v. Pawlakos, No. 01A01-9708-CH-00443, 1998 WL 83029 at *3 (Tenn. Ct. App. Dec. 2, 1998) (in order to attack validity of joint account with right of survivorship, challenging party must show fraud, undue influence, or lack of capacity pursuant to Tenn. Code Ann. § 45-2-703).

4

Moore relies on the following language in Lowry, "Absent clear and convincing evidence of contrary intent expressed at the time of its execution, we hold that a bank signature card containing an agreement in clear and unambiguous language that a joint account with rights of survivorship is intended, creates a joint tenancy enforceable according to its terms; and upon the death of one of the joint tenants, the proceeds pass to the survivor." Lowry at 132. This language was basically codified with the passage of Tenn. Code Ann. § 45-2-703.[2] Under the statute, the signature card provides conclusive evidence of the parties' intent.

However, Moore fails to address additional language providing that joint accounts are "...generally immune from attack *in the absence of fraud, misrepresentation, duress, undue influence*, mutual mistake, and incapacity." Lowry at 133. (emphasis added) Therefore, while under the general rule as presented in Lowry and Tenn. Code Ann. § 45-2-703, Moore would be entitled to the accounts, the circumstances of this case take her outside the general rule. Where there is some evidence of fraud or undue influence, as shown in this case, there is no conclusive evidence as to the validity of the joint account and a party can challenge the validity of the transfer. In order to prevail, the challenging party must show fraud, undue influence, or lack of capacity rendering the transaction invalid. Pawlakos v. Pawlakos, No. 01A01-9708-CH-00443, 1998 WL 83029 (Tenn. Ct. App. Dec. 2, 1998) Accordingly, we now address the trial court's finding that Moore exerted undue influence on Cox.

### Undue Influence

In the proceedings below, the court found that Moore breached a fiduciary duty and exerted undue influence on Cox, and that Cox did not intend to create the accounts for Moore's benefit. In support of its finding, the court pointed to specific facts regarding Moore's behavior. In particular, the court found that Moore had entered into a fiduciary relationship with Cox when she assumed his power of attorney. The court further stated that Moore had breached the fiduciary duty by overreaching and exerting undue influence by withholding information from Cox and threatening him with confinement in a nursing home.

A fiduciary or confidential relationship is one where there is both a dominant party

---

[2]In pertinent part, § 45-2-702(e)1 provides:
"(1) A designation of "joint tenants with right of survivorship," or substantially similar language, shall be *conclusive evidence* in any action or proceeding of the intentions of all named that title vests in the survivor" (emphasis added)

5

and a weaker party and the dominant party exercises some control over the weaker party. Iacometti v. Frassinelli, 494 S.W.2d 496 (Tenn. Ct. App. 1973). A presumption of undue influence arises when the dominant party in a fiduciary relationship receives a gift or some other benefit from the other party. Richmond v. Christian, 555 S.W.2d 105, 107 (Tenn. 1997). The presumption of undue influence renders the transaction invalid unless there is clear and convincing evidence of the fairness of the transaction. Matlock v. Simpson, 902 S.W.2d 384, 386 (Tenn. 1997).

Moore's actions trigger the undue influence presumption. She was the dominant party in a fiduciary relationship with Cox as signified by her assumption of his power of attorney. The creation of the joint accounts with right of survivorship bestowed a gift or benefit upon Moore, the dominant party. Once the presumption of undue influence was triggered, the burden shifted to Moore to rebut the presumption. Moore failed to meet this burden regarding the creation of the joint accounts with right of survivorship at FTB. Moore offered only her own testimony that Cox wanted her instead of Buddy to receive the money. Indeed, all other testimony indicated that Cox wished all his assets to go to Buddy upon his death. The trial court did not err in finding that Moore exerted undue influence upon Cox. Accordingly, the FTB joint accounts are invalid and the funds are subject to the resulting trust created by the court below.

**Conclusion**

Based upon the foregoing, the judgment of the trial court is affirmed. Costs of the appeal are assessed to the Appellant, Brenda Moore, for which execution may issue if necessary.

_____
HIGHERS, J.

6

CONCUR:

_____
FARMER, J.


_____
LILLARD, J.