IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

# IN RE: THE ESTATE OF TROY P. FLYNN, DECEASED, HAROLD FLYNN, V. JAMES EARNEST ARWOOD, ET AL

**Direct Appeal from the Circuit Court for Sevier County**
**No. 96-1045-II     Hon. Richard Vance, Circuit Judge**

**No. E1999-00150-COA-R3-CV - Decided June 29, 2000**

The Trial Court granted proponents of the Will Summary Judgment on the ground there was no evidence of undue influence.  Contestant appealed.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

FRANKS, J., delivered the opinion of the court, in which GODDARD, P.J., and SUSANO, J., joined.

John K. Harber, Pryor, Flynn, Priest and Harber, Knoxville, for Petitioner-Appellant.

Edward L. Summers, Haynes, Meek & Summers, Knoxville, for Respondents-Appellees.

**OPINION**

        In this action contesting the Will of Troy P. Flynn, the Trial Court granted summary judgment to the proponents of the Will, and the contestant has appealed.

        Summary judgment under Tenn. R. Civ. P. Rule 56, is warranted only when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn. 1993).  The party seeking summary judgment has the burden of demonstrating that there are no disputed material facts creating a genuine issue for trial. *Id.* at 215.

        Our review is *de novo* upon the record of the Trial Court.  No presumption of

correctness attaches to decisions granting summary judgments, because they only involve questions of law. *Hembree v. State*, 925 S.W.2d 513 (Tenn. 1996); Tenn. R. App. P. 13(d). In evaluating the evidence, we must view the evidence in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. *Gray v. Amos*, 869 S.W.2d 925 (Tenn. Ct. App. 1993).

The contestant asserts that the Trial Court erred in granting opponent's motion because the evidence raised a presumption of undue influence, thus creating a jury question on the issue of whether the presumption has been rebutted by the proponents. Where there is a properly attested Will, the presumption arises that the decedent was of sound mind and possessed the requisite testimony capacity to make the Will. *Keasler v. Estate of Keasler*, 973 S.W.2d 213, 217 (Tenn. Ct. App. 1997). The burden in a will contest is upon the contestant to demonstrate circumstances that would give rise to a presumption of undue influence. *Id.*

Influence upon one with a sound mind is not prohibited. It is undue influence which is prohibited. *Parham v. Walker*, 568 S.W.2d 622, 624 (Tenn. Ct. App. 1978). For the doctrine to be applicable, there must be a confidential relationship where one party, the beneficiary, is in a position because of a confidential relationship, to exercise undue influence over the mind and will of the testator. *Id.*

The undisputed facts in this case are the contestant is the only child of the testator and Lida Flynn. The testator was divorced in 1965, when the contestant was 22 years old. After the divorce, the testator moved into the residence of J.C. Arwood and his wife, Dorothy L. Arwood and Arwood's children, occupying a room in the basement of their home.

In 1967, the testator and Dorothy Arwood jointly purchased a grocery store business, which they ran until it was sold in 1984. In 1972, the Arwoods sold their home, and the entire family moved into a house which had been purchased by the testator. The Arwoods, the testator, and certain of Arwood's children, all resided together in the house until the testator's death in 1996. In 1982, the testator and Dorothy Arwood purchased a stockyard which they owned and operated until 1989, when the buildings burned. Then the two entered into the cattle hauling business together. They bought and sold several parcels of real estate over the years, and throughout this time the testator and Dorothy Arwood were romantically involved.

On August 20, 1986, the testator and Dorothy Arwood executed mutual Wills, bequeathing their respective estates to one another, with a contingency bequest to the Arwood children. The contestant was not named in his father's Will.

Following the divorce of his parents, the contestant did not have a good relationship with his father, and had little or no contact with him for a period of several years. The relationship improved over time, although contestant admits that he and his father never had an ideal relationship, and it was best described as "so-so".

The Trial Court found that for purposes of its ruling on the motion for summary

judgment, there was a confidential relationship between the testator and Dorothy Arwood. But the Court then found that the record demonstrated that Troy P. Flynn was not under the dominion and control of Dorothy Arwood and granted summary judgment.

In order for the presumption of undue influence to arise, it is not enough to simply show the relationship between the parties, but as stated in *Kelly v. Allen*, 558 S.W.2d 845, 847 (Tenn. 1977) and followed in *Matlock v. Simpson*, 902 S.W.2d 384, 385-386 (Tenn. 1995), the contestant of a will must show elements of dominion and control that would tend to destroy the free agency of the donor. *Kelly* quoting *Vantrease v. Carl*, 410 S.W.2d 629, 632 (Tenn. Ct. App. 1966), observed:

> [A] mere confidential relationship "does not raise a presumption that the beneficiary has exercised undue influence over the testator, and does not cast the burden on the beneficiary of disproving undue influence."

To successfully challenge the motion for summary judgment, the contestant was required to offer evidence that there was a confidential relationship between the parties, and that Ms. Arwood exercised her dominion over the testator, causing him to execute the will in question. When reviewing the facts in the light most favorable to contestant, there is no showing of an element of dominion or control by Ms. Arwood over the testator, and contestant's argument in his brief of "undisputed facts" are mere characterizations of the evidence.

In the contestant's deposition, he testified that the only evidence of undue influence was as follows:

> Q.  Okay. What evidence do you have that one or more of these people unduly influenced your father to make his will?
>
> A.  No more than the fact that he was living with Dorothy and had lived there, you know, for a length of time. She had enough influences on him to get him to move in with her and get a divorce of twenty-eight or thirty years or what it was.
>
> Q.  Okay. Is that it? Is that the evidence that you have to - that's caused you to form your opinion that he was unduly influenced?
>
> A.  I think he was influenced to do it. Yes, I do.
>
> . . .
>
> Q.  And the will, of course, says what it says. Is there any evidence you have that really was not what your father wanted to do or what he intended to do on that day?
>
> A.  No more than the fact that he was influenced to do what he was doing on that

day, and he didn't put in the will that he didn't intend for me to share in it in any way.

Contestant further testified as to the nature of his father's character. He said that his father was easy to influence by a person who was "good to him", but other than that, if you tried to make him do anything, you couldn't get to make him do it." Ms. Arwood testified that it was the testator's idea that mutual wills be made, and they went to a lawyer on the same day, but were not present while the other was discussing his or her will with the lawyer, and that to the best of her recollection, the testator was the one who paid the lawyer. While the testator may have been influenced by Ms. Arwood, mere influence is not prohibited. A person has a right by fair argument or persuasion to induce another to make a will or sign a deed, and even to make it in his own favor, provided the influence is exerted in a fair and reasonable manner, and without fraud or deception. *Kelly v. Allen*, 558 S.W.2d 845, 847 (Tenn. 1977). Influence becomes "undue" only when the free agency of the testator is destroyed and the will of the beneficiary is substituted therefor. *Halle v. Summerfield*, 287 S.W.2d 57 (Tenn. 1956). Contestant failed to offer any material evidence that his father's Will did not reflect the testator's true testamentary intent.

In order to defeat the Motion for summary Judgment, the contestant was required to offer evidence of the requisite elements of dominion and control, which he failed to do.

We affirm the judgment of the Trial Court and remand with the cost of the appeal assessed to the appellant.